1

2

3                          UNITED STATES DISTRICT COURT

4                                 DISTRICT OF NEVADA

5                                       * * *

6    FERNANDO ROBLES,                           Case No. 3:19-cv-00251-MMD-CLB

7                          Petitioner,                      ORDER
          v.
8    WARDEN BAKER,[1] *et al.*,

9                          Respondents.

10

11

12   **I.      SUMMARY**

13          Petitioner Fernando Robles filed a first amended petition for writ of *habeas corpus*

14   under 28 U.S.C. § 2254. (ECF No. 8 ("Petition").) This matter is before the Court for

15   adjudication on the merits of the remaining grounds in the Petition. For the reasons

16   discussed below, the Court denies the Petition and denies Petitioner a certificate of

17   appealability.

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24

25          [1]The state corrections department's inmate locator page indicates that Petitioner
     is incarcerated at the Lovelock Correctional Center ("LCC"). *See*
26   *https://ofdsearch.doc.nv.gov/form.php* (retrieved March 2022 under identification number
     1007559). The department's website reflects that Tim Garrett is the warden of that facility.
27   *See https://doc.nv.gov/Facilities/LCC_Facility/* (retrieved March 2022). At the end of this
     order, the Court directs the Clerk of the Court to substitute Petitioner's current immediate
28   physical custodian, Tim Garrett, as Respondent for the prior Respondent Renee Baker,
     pursuant to, *inter alia*, Rule 25(d) of the Federal Rules of Civil Procedure.

## II.    BACKGROUND[2]

Robles challenges a 2014 judgment of conviction imposed by the Eighth Judicial District Court for Clark County. Following a four-day trial, a jury found Robles guilty of 23 out of 25 charged offenses: 5 counts of statutory sexual seduction; 15 counts of lewdness with a child under the age of 14; 2 counts of sexual assault with a minor under the age of 14; 1 count of attempt sexual assault with a minor under 14. (ECF No. 19-10.) The state court did not adjudicate Robles on the five counts for which the jury convicted Robles of lesser-included offenses: Counts 1, 3, 5, 11, and 13. (*Id.* at 4.) The state court sentenced Robles as follows:

Count 2: 10 years to life;
Count 4: 10 years to life, concurrent with Count 2;
Count 6: 10 years to life, concurrent with Count 4;
Count 7: 35 years to life, consecutive to Count 6;
Count 9: 35 years to life, concurrent with Count 7;
Count 12: 10 years to life, consecutive with Count 9;
Count 14: 10 years to life, concurrent with Count 12;
Count 16: 10 years to life, concurrent with Count 14;
Count 17: 10 years to life, concurrent to Count 16;
Count 18: 10 years to life, concurrent to Count 17;
Count 19: 2 years to 20 years, concurrent with Count 18;
Count 20: 10 years to life, concurrent with Count 19;
Count 22: 10 years to life, concurrent with Count 20;
Count 23: 10 years to life, concurrent with Count 22;
Count 24: 10 years to life, concurrent with Count 23;
Count 25: 10 years to life, consecutive with Count 24.

(ECF No. 19-10.) Robles appealed. (ECF No. 19-22.) The Nevada Supreme Court affirmed in part and reversed in part, finding that the district court erred by setting aside Counts 1, 3, 5, 8, 10, 11, and 13 instead of ordering them dismissed. (ECF No. 20-5.) The Nevada Supreme Court remanded with instructions to dismiss those counts and enter an amended judgment. (*Id.*) The Nevada Supreme Court also found Robles was entitled to

---

[2]The Court makes no credibility findings or other factual findings regarding the truth or falsity of evidence or statements of fact in the state court. The Court summarizes the factual assertions solely as background to the issues presented in the case, and it does not summarize all such material. No statement of fact made in describing statements, testimony, or other evidence in the state court constitutes a finding by the Court. Any absence of mention of a specific piece of evidence or category of evidence does not signify that the Court has overlooked the evidence in considering Petitioner's claim.

1  reversal of Count 19 because the State amended the count after both sides had rested

2  and changed the method of the crime. (*Id.* at 2.)

3      Robles was appointed post-conviction counsel and filed a state petition for writ of

4  habeas corpus, seeking post-conviction relief. (ECF Nos. 20-10, 20-11.) The state court

5  denied relief. (ECF No. 21-2.) Robles appealed the decision on the basis of multiple

6  claims of ineffective-assistance-of-counsel. (ECF No. 21-12.) The Nevada Court of

7  Appeals affirmed the denial of relief, and a remittitur issued. (ECF Nos. 21-16, 21-17.)

8      In May 2019, Robles initiated this federal habeas proceeding *pro se* and requested

9  counsel. (ECF Nos. 1-1, 1-2.) This Court later appointed the Federal Public Defender and

10  granted Robles leave to amend his petition. (ECF No. 7.) He filed a counseled second

11  amended petition for writ of habeas corpus (ECF No. 8 ("Petition")) in September 2019,

12  alleging three grounds for relief. Respondents filed a motion to dismiss, and the Court

13  granted the motion dismissing the portion of Ground 1 related to Count 13 because that

14  count was dismissed by the state court on remand. (ECF No. 30.)

15  **III.   LEGAL STANDARDS**

16      **A.   Review under the Antiterrorism and Effective Death Penalty Act**

17      28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in

18  *habeas corpus* cases under the Antiterrorism and Effective Death Penalty Act

19  ("AEDPA"):

20  An application for a writ of habeas corpus on behalf of a person in custody
    pursuant to the judgment of a State court shall not be granted with respect

21  to any claim that was adjudicated on the merits in State court proceedings
    unless the adjudication of the claim –

22

23  (1) resulted in a decision that was contrary to, or involved an unreasonable
    application of, clearly established Federal law, as determined by the

24  Supreme Court of the United States; or
    (2) resulted in a decision that was based on an unreasonable determination

25  of the facts in light of the evidence presented in the State court proceeding.

26  28 U.S.C. § 2254(d). A state court decision is contrary to established Supreme Court

27  precedent, within the meaning of § 2254(d)(1), "if the state court applies a rule that

28  contradicts the governing law set forth in [Supreme Court] cases" or "if the state court

3

1  confronts a set of facts that are materially indistinguishable from a decision of [the

2  Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v.*

3  *Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

4  A state court decision is an unreasonable application of established Supreme Court

5  precedent under § 2254(d)(1), "if the state court identifies the correct governing legal

6  principle from [the Supreme] Court's decisions but unreasonably applies that principle

7  to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The

8  'unreasonable application' clause requires the state court decision to be more than

9  incorrect or erroneous. The state court's application of clearly established law must be

10 objectively unreasonable." *Id.* (internal citation omitted) (quoting *Williams*, 529 U.S. at

11 409-10).

12      The Supreme Court has instructed that a "state court's determination that a claim

13 lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'

14 on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101

15 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Court has stated

16 that "even a strong case for relief does not mean the state court's contrary conclusion

17 was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v.*

18 *Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted)

19 (describing the standard as "difficult to meet" and "highly deferential standard for

20 evaluating state-court rulings, which demands that state-court decisions be given the

21 benefit of the doubt").

22      **B.   Standard for Evaluation an Ineffective-Assistance-of-Counsel Claim**

23      In *Strickland*, the Supreme Court propounded a two-prong test for analysis of

24 ineffective-assistance-of-counsel claims requiring Petitioner to demonstrate that: (1) the

25 counsel's "representation fell below an objective standard of reasonableness[;]" and (2)

26 the counsel's deficient performance prejudices Petitioner such that "there is a reasonable

27 probability that, but for counsel's unprofessional errors, the result of the proceeding would

28 have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Courts

considering an ineffective-assistance-of-counsel claim must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. It is Petitioner's burden to show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for Petitioner to "show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, errors must be "so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state court previously adjudicated the ineffective-assistance-of-counsel claim under *Strickland*, establishing the court's decision was unreasonable is especially difficult. *See Richter*, 562 U.S. at 104-05. In *Richter*, the Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *See id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) The Court further clarified, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

## IV.   DISCUSSION

### A.   Ground 1

In Ground 1, Robles alleges that there was insufficient evidence adduced at trial to support the convictions in Counts 7, 9, 14, and 23, two counts of sexual assault and two counts of lewdness. (ECF No. 8 at 12-16.) C.M. lived with her father and their housemates, Armando Lopez and Robles. (ECF No. 17-2 at 42-49.) C.M. testified that during this course of time when C.M. was 11 years old, Robles began touching her. (*Id.*) C.M., who was 12 years old at the time, disclosed Robles's conduct to Lopez. (*Id.*) After Lopez informed C.M.'s father, C.M. was taken to the hospital and interviewed by detectives. (*Id.*) Detectives interviewed Robles and he admitted to specific sexual conduct with C.M. (*Id.*)

1    Robles asserts a violation of his right to due process because despite Robles's

2    admission to detectives of at least one sexual encounter with C.M., there was insufficient

3    evidence to convict him on several counts. (ECF No. 44 at 9-10.) He further asserts that

4    in Nevada the State must present "some reliable indicia that the number of acts charges

5    actually occurred," and that it requires more than mere "speculation" of the number of

6    times the alleged sexual assault or lewdness occurred. *See LaPierre v. State*, 836 P.2d

7    56, 58 (Nev. 1992).

8    On direct appeal, The Nevada Supreme Court held:

9    Robles claims that insufficient evidence was adduced to support many of

10   the charges. "When reviewing a criminal conviction for sufficiency of the
     evidence, this court determines whether any rational trier of fact could have
     found the essential elements of the crime beyond a reasonable doubt when

11   viewing the evidence in the light most favorable to the prosecution." *Brass
     v. State*, 128 Nev. 748, 754, 291 P.3d 145, 149-50 (2012); *see also Jackson*

12   *v. Virginia*, 443 U.S. 307, 319 (1979). 'This court will not reweigh the
     evidence or evaluate the credibility of witnesses because that is the

13   responsibility of the trier of fact.'" *Clancy v. State*, 129 Nev., Adv. Op. 89,
     313 P.3d 226, 231 (2013) (*quoting Mitchell v. State*, 124 Nev. 807, 816, 192

14   P.3d 721, 727 (2008)).

15   First, Robles argues that because there was no competent testimony as to
     how many times he touched and/or penetrated the victim digitally and

16   because the victim only testified with specificity about one incident, count
     14 (lewdness) must be dismissed for insufficient evidence. This court has

17   "repeatedly held that the testimony of a sexual assault victim alone is
     sufficient to uphold a conviction," and that "the victim must testify with some

18   particularity regarding the incident." *LaPierre v. State*, 108 Nev. 528, 531,
     836 P.2d 56, 58 (1992) (emphasis in original). Additionally, we have

19   recognized that "it is difficult for a child victim to recall exact instances when
     the abuse occurs repeatedly over a period of time," and held that the victim

20   need not "specify exact numbers of incidents, but there must be some
     reliable indicia that the number of acts charged actually occurred." *Id.* Here,

21   Robles concedes that the victim testified to one incident with specificity. The
     victim also testified that she told the detective Robles' hand touched her

22   vagina every time he attempted sexual intercourse, an estimated nine
     times. We conclude that the testimony, when viewed in the light most

23   favorable to the prosecution, was sufficient for a rational trier of fact to find
     Robles guilty beyond a reasonable doubt of count 14 for "using his hand(s)

24   and/or finger(s) to touch and/or rub and/or fondle the [victim's] genital area."

25   Second, Robles argues that because the State never asked the victim how
     many times Robles kissed her or if he kissed her more than once, there was

26   insufficient evidence for both counts 22 and 23 (lewdness). The victim
     testified that, at least weekly while Robles lived at her residence, she and

27   Robles would kiss while they were on his bed. *See Rose v. State*, 123 Nev.
     194, 203-04, 163 P.3d 408, 415 (2007). The victim also testified that, in the

28   morning when no one else was at the residence, she would go into Robles
     room where he would start kissing her until he had to leave for work. We

6

1
2
3
4
5
6

conclude that Robles' convictions for counts 22 and 23 were supported by sufficient evidence.

Third, Robles argues that because there was overwhelming evidence of consent, no reasonable juror could have found him guilty of the sexual assault in count 7. We conclude that a rational juror could find that Robles committed the sexual assault where the victim was 11 or 12 years old at the time and testified that she did not want to do these things with Robles, that Robles never asked her if she wanted to do the sexual acts, but that she went along with it because she thought Robles might do something to her if she said no.

7
8
9
10
11
12

Fourth, Robles argues that because the victim's statements, both at trial and to law enforcement, were contradictory as to whether Robles anally penetrated her, there was insufficient evidence for count 9 (sexual assault). A review of the record reveals that the victim's testimony provided a basis upon which a rational trier of fact could have found Robles guilty of the sexual assault in count 9. *See Conner v. State*, 130 Nev., Adv. Op. 49, 327 P.3d 503, 507 (2014) ("It is the jury's function, not that of the court, to assess the weight of the evidence and determine the credibility of witnesses, and a verdict supported by substantial evidence will not be disturbed by a reviewing court." (internal quotation marks omitted)).

13
14
15

(ECF No. 20-5 at 2-5.) The Nevada Supreme Court's ruling was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court.

16
17
18
19
20

When a habeas petitioner challenges the sufficiency of evidence to support his conviction, the court reviews the record to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000).

21
22
23
24
25
26
27
28

Sufficiency claims are limited to a review of the record evidence submitted at trial. *See Herrera v. Collins*, 506 U.S. 390, 402 (1993). Such claims are judged by the elements defined by state law. *See Jackson*, 443 U.S. at 324 n.16). The reviewing court must respect the exclusive province of the fact-finder to determine the credibility of witnesses, to resolve evidentiary conflicts, and to draw reasonable inferences from proven facts. *See United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996). The district court must assume the trier of fact resolved any evidentiary conflicts in favor of the prosecution, even

7

1    if the determination does not appear on the record and must defer to that resolution. *See*

2    *Jackson*, 443 U.S. at 326.

3        Only if no rational trier of fact could have found proof of guilt beyond a reasonable

4    doubt is habeas relief warranted. *See Jackson*, 443 U.S. at 324. When the deferential

5    standards of AEDPA and *Jackson* are applied together, the question for decision on

6    federal habeas review is whether the state court's decision unreasonably applied

7    the *Jackson* standard to the evidence at trial. *See, e.g.*, *Juan H. v. Allen*, 408 F.3d 1262,

8    1274-75 (9th Cir. 2005) (citations omitted).

9            **1.    Count 7**

10        Count 7 alleged that Robles performed cunnilingus on C.M. "against her will, or

11   under conditions in which [he] knew, or should have known, that C.M. was mentally or

12   physically incapable of resisting or understanding the nature of [his] conduct." (ECF No.

13   15-11.) Robles argues that the Nevada Supreme Court's finding was based on an

14   unreasonable determination of the facts because it overlooked testimony that C.M. initially

15   consented to the initial incident "and that she withdrew her consent upon deciding that

16   she did not like it."[3] (ECF No. 44 at 10.) He asserts that Robles had a reasonable and

17   good faith belief that C.M. consented to sexual penetration. (*Id.* at 11.) C.M. testified at

18   trial as to the initial incident of cunnilingus that Robles asked her if she wanted to do it,

19   and answered affirmatively when asked, "And you sort of said, well, if you want to, okay?"

20   (ECF No. 17-2 at 116-17.) She further testified that the next time Robles tried to do it, she

21   told him she did not like it, and Robles stopped. (*Id.*)

22        The Nevada Supreme Court found that "a rational juror could find that Robles

23   committed the sexual assault where the victim was 11 or 12 years old at the time and

24   testified that she did not want to do these things with Robles, that Robles never asked

25   her if she wanted to do the sexual acts, but that she went along with it because she

26

27          [3]Robles acknowledges that the statute defining sexual assault was amended in
     2015 to automatically make any sexual penetration of a minor under the age of 14 a
28   sexual assault. *See Alotaibi v. State*, 404 P.3d 761, 762 n.1 (Nev. 2017). However, at the
     time of Robles's trial, the defense of consent was available. (ECF No. 44 at 11 n.2.)

1   thought Robles might do something to her if she said no." (ECF No. 20-5 at 4.) C.M.
2   testified that she was scared after the first incident and was embarrassed to tell her father.
3   (ECF No. 17-2 at 69.) She testified that she did not want Robles to touch her or do the
4   things he did to her. (*Id.* at 95.) At closing, the State argued that C.M. was 11 years old,
5   that Robles is a grown man, asking, "[s]houldn't he have known if she could consent or
6   not?" (ECF No. 19-3 at 33.) The State further highlighted the commonsense jury
7   instruction arguing that the jurors should "use [their] common sense, talk about how [C.M.]
8   testified, what she testified to, her demeanor…" (*Id.*) Further, the jury was provided an
9   instruction as to the defense of consent to the charge of sexual assault. (ECF No. 19-1 at
10  20.) At closing, defense counsel highlighted the consent defense jury instruction and that
11  such defense applies regardless of C.M.'s age. (ECF No. 19-3 at 55.) Robles fails to
12  establish that the Nevada Supreme Court's decision was based on an unreasonable
13  determination of facts in light of the record before the state court. Accordingly, the Nevada
14  Supreme Court reasonably determined that any rational trier of fact could have found the
15  essential elements of sexual assault beyond a reasonable doubt.

16  **2.    Count 9**

17      Count 9 charges Robles with sexual assault and subjecting C.M. to sexual
18  penetration through anal penetration or by "inserting his penis into the anal opening" of
19  the victim. (ECF No. 19-2 at 5.) Robles argues that C.M. provided conflicting testimony
20  about whether Robles's penis penetrated her anus. (ECF No. 44 at 13.) Robles asserts
21  that the Nevada Supreme Court's decision was based on an unreasonable determination
22  of facts because C.M. testified at trial that when she previously spoke to detectives, she
23  told the detectives Robles's penis did not "go in" her butt. (ECF No. 17-2 at 116.)

24      The Nevada Supreme Court found that "[a] review of the record reveals that the
25  victim's testimony provided a basis upon which a rational trier of fact could have found
26  Robles guilty of the sexual assault in count 9." (ECF No. 20-5 at 5.) At trial, C.M. testified
27  that she would bend down, and Robles would slide his penis "through" her. (ECF No. 17-
28  2 at 72.) Upon further questioning on direct examination, C.M. testified as follows:

9

1

2

Q: Okay. Did he ever touch where the poop – the hole where the poop comes out?

3

A: He tried to, but he said it was too small.

4

Q: And what did it feel like when he tried to?

5

A: It kind of hurted (sic).

6

Q: Okay. Did it go in at all?

7

A: Just the tip a little bit.

8

Q: Just the tip. And that's – did you tell him it was hurting?

9

A: No.

10

Q: He just stopped and said, It's too small?

11

A: Yeah.

12

Q: Yes?

13

A: Yes.

14

Q: Did he do that – did he try to put it in that hole more than one time?

15

A: Yes, he tried.

16

Q: More than two times?

17

A: Yeah, like, five times, around there.

18

(ECF No. 17-2 at 73.) In addition to C.M.'s testimony, Officer Warran testified regarding

19

his interview with C.M. at the hospital. Officer Warran testified that he asked C.M. if

20

Robles placed his penis into her anus, explained that an anus was a "butthole," and C.M.

21

answered affirmatively. (ECF No. 18-1 at 49-50.)

22

If confronted by a record that supports conflicting inferences,

23

federal habeas courts "must presume-even if it does not affirmatively appear in the

24

record-that the trier of fact resolved any such conflicts in favor of the prosecution, and

25

must defer to that resolution." *Jackson*, 443 U.S. at 326. *See also Schlup v. Delo,* 513

26

U.S. 298, 330 (1995) ("[U]nder *Jackson*, the assessment of the credibility of witnesses is

27

generally beyond the scope of review."); *United States v. Ramos,* 558 F.2d 545, 546 (9th

28

Cir.1977) ("[T]he reviewing court must respect the exclusive province of the jury to

10

1    determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable
2    inferences from proven facts, by assuming that the jury resolved all such matters in a
3    manner which supports the verdict.").

4        Here, the jury considered C.M.'s testimony at trial, what she testified to as to her
5    previous statements to detectives, as well as her statements to Officer Warran in the
6    hospital. Viewing the evidence in the light most favorable to the prosecution, a rational
7    juror could have found Robles guilty of Count 9 beyond a reasonable doubt. Under
8    AEDPA's deferential standard, the Nevada Supreme Court's denial of this claim was not
9    objectively unreasonable.

10               **3.    Count 14**

11       Robles argues that C.M. did not offer competent testimony as to how many times
12   Robles touched and/or penetrated her vagina with his fingers beyond a single incident
13   where his fingers went "halfway" into her vagina. (ECF No. 8 at 12.) He asserts that
14   although C.M. told Detective Mason that Robles touched her vagina every time he put his
15   penis in her vagina, which was nine times, C.M. admitted that she was guessing when
16   she told Detective Mason that Robles touched her vagina nine times. (*Id.* at 12-13.)
17   Robles argues that the Nevada Supreme Court's ruling is not owed deference because it
18   is based on an unreasonable determination of facts because C.M.'s statement provides
19   no indicia of reliability. (ECF No. 44 at 15-16.)

20       Respondents argue that in addition to her testimony that Robles touched her
21   vagina nine times, C.M. also testified that Robles followed her into the shower and
22   touched her genital area. (ECF No. 37 at 14-16.) The Nevada Supreme Court found that
23   C.M. "also testified that she told the detective Robles' hand touched her vagina every time
24   he attempted sexual intercourse, an estimated nine times. We conclude that the
25   testimony, when viewed in the light most favorable to the prosecution, was sufficient for
26   a rational trier of fact to find Robles guilty beyond a reasonable doubt of count 14 for
27   'using his hand(s) and/or finger(s) to touch and/or rub and/or fondle the [victim's] genital
28   area.'" (ECF No. 20-5 at 3-4.) Based on the evidence in the record and viewing the

1
2
3
4
5

evidence in the light more favorable to the prosecution, the Court cannot conclude that no rational trier of fact could have found proof of guilt beyond a reasonable doubt regarding Count 14. Accordingly, Robles has not demonstrated that the Nevada Supreme Court's determination of this claim was unreasonable in its factual determinations or misapplied clearly established federal law.

6

### 4.    Count 23

7
8
9
10
11
12
13

Robles was convicted of two counts of lewdness involving kissing. Robles argues that the State did not present evidence regarding the number of times Robles kissed C.M. and that that C.M. described only one instance of kissing. (ECF No. 8 at 13.) Robles asserts that the Nevada Supreme Court's determination was based on an unreasonable determination of facts because the state appellate court overlooked that fact that at trial C.M. testified to only one incident where Robles kissed her on the mouth. (ECF No. 44 at 16.)

14
15
16
17
18
19
20
21
22
23
24
25
26

The Nevada Supreme Court found that "[t]he victim testified that, at least weekly while Robles lived at her residence, she and Robles would kiss while they were on his bed," and that "[t]he victim also testified that, in the morning when no one else was at the residence, she would go into Robles room where he would start kissing her until he had to leave for work." (ECF No. 20-5 at 4.) The Court's review of the record reveals sufficient evidence to establish guilt beyond a reasonable doubt as determined by a rational trier of fact. At trial, C.M. testified that Robles would not go more than one week without having C.M. laying in bed with him where he would be kissing her. (ECF No. 17-2 at 70.) She further testified that in the morning when nobody was around she would go into his room, lay down on his bed, and he would pull her towards him and start kissing her until it was time for him to go to work. (*Id.* at 121.) The evidence presented at trial is sufficient for this Court to conclude that the Nevada Supreme Court's decision to deny relief was not objectively unreasonable under the *Jackson* standard.

27

///

28

///

12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## B.     Ground 2

In Ground 2, Robles alleges that the state court denied Robles's right to a fair trial when it admitted highly prejudicial and irrelevant evidence that the victim's father found "bloody underwear" in the backyard. (ECF No. 8 at 16.) Robles filed a motion in limine to exclude testimony pertaining to C.M.'s father finding bloody underwear in the dog's mouth in his backyard. (ECF No. 14-11.) C.M.'s father questioned C.M. about the underwear and C.M. denied that the underwear belonged to her. (*Id.* at 12.) Her father acknowledged that the underwear was too big and that someone may have thrown it in the backyard. (*Id.*) The State argued that the conversation related to the bloody underwear was relevant because C.M.'s father became more concerned and that C.M.'s father perceived that Robles changed his behavior following the discovery of the bloody underwear. (ECF No. 15-2 at 4.)

At trial, the State elicited testimony from C.M.'s father establishing that C.M.'s father was concerned about C.M.'s relationship with Robles because she wanted to go to Circus Circus with him and that Robles wanted to pick C.M. up from school even though C.M.'s father did not want him to. (ECF No. 17-2 at 167.) During this line of questioning, the State asked C.M.'s father what else made him suspicious and he testified that he found bloody underwear in his backyard. (*Id.* at 168.) On cross-examination, defense counsel elicited testimony that upon questioning from her father regarding the underwear, C.M. denied that it was hers, that C.M.'s father acknowledged the underwear was too big to belong to C.M., and that C.M.'s father thought someone may have thrown the underwear in the backyard. (*Id.* at 180.) At closing, the State argues that, "[C.M.] starts becoming aggressive. Now he starts becoming somewhat suspicious when he sees the bloody underwear, and then the defendant starts avoiding him." (ECF No. 19-3 at 69.)

On direct appeal, the Nevada Supreme Court held:

> Robles claims the district court erred in admitting evidence of bloody underwear the victim's father found in the backyard. We review a district court's decision to admit or exclude evidence for an abuse of discretion. *Mclellan v. State*, 124 Nev. 263, 267, 182 P.3d 106, 109 (2008). While we agree with Robles that this evidence was unfairly prejudicial and ultimately irrelevant, we conclude that any error in admitting this evidence was

1
2
3
4

> harmless beyond a reasonable doubt as the victim's father testified that the victim denied the underwear was hers and that the underwear was too big for the victim and as the evidence against Robles was overwhelming, including his confession and argument at trial that he had a relationship with the victim and that she agreed to engage in sexual acts with him *See Estes v. State*, 122 Nev. 1123, 1141, 146 P.3d 1114, 1126 (2006).

5
6
7

(ECF No. 20-5 at 11.) The Nevada Supreme Court's ruling was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court.

8
9
10
11
12
13
14
15
16

In order for the admission of evidence to provide a basis for habeas relief, the evidence must have "rendered the trial fundamentally unfair in violation of due process." *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995) (citing *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). The erroneous admission of evidence constitutes a constitutional violation only when "there are no permissible inferences the jury may draw from the evidence" and that evidence is "of such quality as necessarily prevents a fair trial." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991) (quoting *Kealohapauole v. Shimoda*, 800 F.2d 1463, 1465 (9th Cir. 1986)) (internal quotation marks omitted).

17
18
19
20
21
22
23
24
25
26
27
28

In a federal habeas case, where the state court has determined that a constitutional error was harmless beyond a reasonable doubt, as required by *Chapman v. California*, 386 U.S. 18 (1967), that harmless-error determination is reviewed for reasonableness under 28 U.S.C. § 2254(d). *See Davis v. Ayala*, 576 U.S. 257, 269 (2015) ("When a *Chapman* decision is reviewed under AEDPA, 'a federal court may not award habeas relief under § 2254 unless the *harmlessness determination itself* was unreasonable.'") (quoting *Fry v. Pliler*, 551 U.S. 112, 119 (2007) (emphasis in original)). If the federal habeas court determines that the state court's harmless-error analysis was objectively unreasonable, it then must determine whether the error was prejudicial under *Brecht v. Abrahamson*, 507 U.S. 619 (1993), before it can grant relief. *See Fry*, 551 U.S. at 119-20. Under the *Brecht* standard, the Court may grant habeas relief only if it has "grave doubt about whether a trial error of federal law had 'substantial and injurious

14

1   effect or influence in determining the jury's verdict.'" *Davis*, 576 U.S. at 268

2   (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)). However, if the

3   federal habeas court determines that the state court's *Chapman* harmlessness analysis

4   was reasonable, that ends the inquiry. The federal court "need not go on to 'formally

5   apply'" the *Brecht* test. *Id.*

6       The Nevada Supreme Court's ruling is reasonable. The Nevada Supreme Court

7   found that admission of testimony related to the bloody underwear was unfairly prejudicial

8   and irrelevant. (ECF No. 20-5 at 11.) The state appellate court, however, also concluded

9   that any error in admitting such evidence was harmless beyond a reasonable doubt "as

10  the victim's father testified that the victim denied the underwear was hers and that the

11  underwear was too big for the victim and as the evidence against Robles was

12  overwhelming, including his confession and argument at trial that he had a relationship

13  with the victim and that she agreed to engage in sexual acts with him." (*Id.*)

14      On cross-examination, the jury heard testimony clarifying that the bloody

15  underwear was too big to belong to C.M. and that C.M's father ultimately concluded that

16  someone likely threw the bloody underwear into his backyard. Given the wealth of

17  evidence presented at trial, including Robles's confession and C.M's testimony, and

18  defense counsel's questioning on cross-examination, the Nevada Supreme Court's

19  determination that admitting testimony regarding the bloody underwear was harmless

20  error is not objectively unreasonable. Because the Nevada Supreme Court's decision

21  rejecting Robles's claim was not an unreasonable application of federal law, Robles is

22  denied habeas relief on Ground 2.

23      **C.    Ground 3**

24      In Ground 3, Robles argues that trial counsel rendered ineffective assistance for

25  failure to object to two instances of prosecutorial misconduct. (ECF No. 8 at 20.)

26          **1.    Ground 3(a)**

27      Robles asserts in Ground 3(a) that trial counsel rendered ineffective assistance for

28  failing to object to the State's denigration of defense when it argued that Robles shifted

1   the blame to police and their lack of thorough investigation. (ECF No. 8 at 20.) At trial,

2   counsel for Robles highlighted that police interviewed the housemate who C.M. disclosed

3   Robles's conduct to, Armando, only one time, that there was no DNA evidence, and that

4   crime scene analysts did not go to the house to document the layout of the house where

5   the alleged conduct took place. (ECF Nos. 18-1 at 121-124, 19-3 at 50-51.) At closing,

6   the State asserted as follows to the jury:

7           Essentially, the theme throughout the defense's opening as well as the
            defense's closing has been kind of the same. It's the detective wasn't
8           thorough enough. There was no DNA. … Unfortunately, that ignores a lot
            of the evidence that's in before you. It's easy to shift blame, and let's focus
9           on the detective and what he didn't do because we don't like what he did
            do. We don't like that he got a very compelling and credible statement from
10          a kiddo who had no reason, no motivation to lie.

11  (ECF No. 19-3 at 60.) The state also argued:

12          You know, sometimes if the facts and the law are a problem, then a little
            cop bashing of what he didn't do and how arrogant and how it doesn't seem
13          important -- he never said it wasn't important. What he said is they've got a
            lot of cases. DNA evidence is something that's hard to get. It's very
14          expensive. There's a back log of it. So he prioritized. So in a case where
            there isn't any DNA evidence, where there isn't any expectation to find
15          relevant helpful DNA and where you've got a kid who's making a clear,
            credible, motiveless disclosure and more importantly you've got the only
16          other eyewitness admitting to the conduct, then there is no use for DNA,
            and you have to use limited resources, and he did a thorough examination.
17

18  (ECF No. 19-3 at 70.) Trial counsel did not object to such arguments and Robles argues

19  that counsel's failure to object constitutes deficient performance. (ECF No. 8 at 21.) He

20  asserts that he was prejudiced because he was deprived of a fair trial. (*Id.*) The Nevada

21  Court of Appeals held:

22          Robles argued his trial counsel was ineffective for failing to object when the
            State denigrated his defense by arguing he had shifted the blame to the
23          police and their lack of a thorough investigation. Robles failed to
            demonstrate his counsel's performance was deficient or resulting prejudice.
24          Robles raised the underlying claim on direct appeal under a plain error
            standard and the Nevada Supreme Court concluded he was not entitled to
25          relief because "the State reasonably responded to Robles's challenge to the
            quality of the police investigation." *Robles v. State*, Docket No. 66593
26          (Order Affirming in Part, Reversing in Part and Remanding, October 17,
            2016). As the Nevada Supreme Court has already concluded the State's
27          argument was reasonable given the circumstances of this matter, Robles
            did not demonstrate his counsel's failure to object fell below an objectively
28          reasonable standard or a reasonable probability of a different outcome had

                                            16

1
2
counsel objected. Therefore, we conclude the district court did not err by denying this claim.

3 (ECF No. 21-16 at 6.) The state appellate court's rejection of Robles's ineffective
4 assistance claim was neither contrary to nor an objectively unreasonable application of
5 *Strickland*.

6        The Nevada Court of Appeals' determination that Robles failed to demonstrate that
7 his counsel was deficient was not an unreasonable application of the performance prong
8 of *Strickland*. On direct appeal, the Nevada Supreme Court had already determined there
9 was "no plain error" because "the State reasonably responded to Robles' challenge to the
10 quality of the police investigation." (ECF No. 20-5 at 12.) Trial counsel's decision not to
11 object was reasonable because the State was rebutting a defense argument regarding
12 the quality of the investigation by police and the lack of DNA evidence. Further, trial
13 counsel objected multiple times at closing, including as to improper burden shifting and
14 commenting on veracity, which the trial court sustained. (ECF Nos. 19-3 at 60-62.)
15 Counsel's lack of objection to the State's rebuttal argument at closing regarding the
16 quality of police investigation does not fall "outside the wide range of professionally
17 competent assistance." *Strickland*, 466 U.S. at 690.

18        In order to prevail on the ineffective assistance claim, Robles must show his trial
19 counsel acted deficiently and "a reasonable probability that, but for counsel's
20 [deficiencies], the result of the proceeding would have been different." *Strickland*, 466
21 U.S. at 694. However, the Court need not "address both components of the inquiry" if
22 Petitioner "makes an insufficient showing on one." *Id.* at 697. Although the Nevada Court
23 of Appeals held Robles failed to demonstrate both deficiency and resulting prejudice,
24 Robles has not sufficiently demonstrated here his counsel's "representation fell below an
25 objective standard of reasonableness." *Id.* Therefore, the *Strickland* inquiry need not
26 continue. Robles has not demonstrated that the Nevada Court of Appeals' decision was
27 contrary to or involved an unreasonable application of clearly established federal law or
28

1    resulted in a decision that was based on an unreasonable determination of the facts.

2    Robles is therefore denied federal habeas relief on Ground 3(a).

3                            **2.      Ground 3(b)**

4         In Ground 3(b), Robles argues that trial counsel rendered ineffective assistance

5    for failing to object to the State's inflammatory statement to the jury that "[C.M.]'s all

6    messed up because we don't do this to 11-year-old children. We don't. [Robles] does."

7    (ECF No. 8 at 22.) He asserts that such statement set up an "us vs. him" dichotomy

8    casting Robles as an "other" and implying he is not a decent member of society. (*Id.*) In

9    affirming the denial of Robles's state habeas petition, the Nevada Court of Appeals held:

10        Robles argued his trial counsel was ineffective for failing to object during
          rebuttal argument when the State improperly inflamed the jury by stating the
11        victim was "messed up" by the abuse and "we don't" commit such acts, but
          Robles does. Robles failed to demonstrate resulting prejudice. Robles
12        raised the underlying claim on direct appeal under a plain error standard
          and the Nevada Supreme Court concluded Robles did not demonstrate the
13        State's comment amounted to error "causing actual prejudice or
          miscarriage of justice." *Id.* Given the Nevada Supreme Court's conclusion
14        that Robles did not suffer actual prejudice from the challenged statement,
          and Robles confessed to committing sexual acts with the young victim, we
15        conclude Robles failed to demonstrate a reasonable probability of a
          different outcome at trial had counsel raised an objection to this comment.
16        Therefore, we conclude the district court did not err by denying this claim.

17   (ECF No. 21-16 at 6-7.) The Nevada Court of Appeals' rejection of Robles's ineffective

18   assistance claim was neither contrary to nor an objectively unreasonable application of

19   *Strickland.*

20        The state appellate court reasonably determined that Robles failed to demonstrate

21   that, but for counsel's failure to object to the State's alleged inflammatory statement to

22   the jury, there was a reasonable probability that the outcome of the trial would have been

23   different. The Nevada Court of Appeals considered the decision on direct appeal

24   determining that Robles did not demonstrate actual prejudice or a miscarriage of justice

25   as a result of the alleged improper comment by the State. (ECF No. 20-5 at 14.) The

26   comment that C.M. was "all messed up" and that "we don't" commit such acts, but Robles

27   does did not substantially affect the jury's verdict, in light of the substantial evidence that

28   Robles committed the charges to which the jury found Robles guilty, including Robles's

own confession and C.M.'s testimony. Accordingly, the Nevada Court of Appeals reasonably determined that Robles failed to demonstrate prejudice under *Strickland*. Robles therefore is denied federal habeas relief on Ground 3(b).

## V.  CERTIFICATE OF APPEALABILITY

This is a final order adverse to Robles. Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability ("COA"). Therefore, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this Court's procedural ruling was correct. *Id.*

Applying these standards, this Court finds that a certificate of appealability is unwarranted.

## VI.  CONCLUSION

It is therefore ordered that Petitioner Fernando Robles's first amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 8) is denied.

It is further ordered that a certificate of appealability is denied.

It is further ordered that the Clerk of the Court is directed to substitute Tim Garrett for Respondent Renee Baker, enter judgment accordingly, and close this case.

DATED THIS 29th Day of March 2022.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE